IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 22-cr-132-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. LEONARD CORDOVA

    Defendant.

## GOVERNMENT'S MOTION FOR DOWNWARD VARIANCE

    The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits the following motion for downward variance with respect to defendant LEONARD CORDOVA. For the reasons described below, the Government respectfully requests that the Court sentence the defendant to 115 months' imprisonment, a downward variance from his Guidelines range of 151-188 months' imprisonment. As explained in more detail below, the Government agreed to recommend a sentence within a Guidelines range of 92-115 months because the defendant agreed to plead guilty to the drug charges in this case before the Government had access to the laboratory purity analysis for the methamphetamine that he sold to a confidential source.

## Facts

    The facts in this case are amply outlined in the parties' plea agreement [ECF #49] and the presentence investigation report ("PSR") [ECF #52] and so will be repeated only in brief here.

1

One set of charges in this matter stem from multiple separate incidents in which the defendant—a previously-convicted felon—fired a gun at other people and sold drugs to a confidential source (the "CS").  In the first incident where the defendant shot a gun at someone else, on September 12, 2021, the defendant was in his driveway in a residential neighborhood in Pueblo, Colorado.  Prior to the shooting, the defendant was pacing in his driveway, apparently waiting for a target vehicle to drive by.  The vehicle, a silver SUV, drove by, and the driver exchanged words with the defendant.  The defendant then produced a gun and fired numerous shots in the direction of the SUV.  This incident was captured on a neighbor's security camera.  The video is being conventionally submitted as Exhibit 1.

The defendant was arrested in Pueblo shortly after this incident and agreed to speak with police.  After being administered *Miranda* warnings, the defendant told police that he was an ACE gang member and that the person in the SUV was his on-again-off-again girlfriend's (the "Sometimes-Girlfriend") ex-husband (the "Ex-Husband"), with whom he was in a dispute.  The defendant confirmed that a photo on his cell phone of a particular Glock handgun (with a visible serial number) was the gun that he used to shoot at the Ex-Husband.  He also claimed that the smashed the gun with a hammer and threw it in a body of water.  The defendant was charged with offenses but then released from custody.

One week later, on September 17, 2021, the defendant, from a moving vehicle, fired numerous shots at another moving vehicle that was being driven by the Sometimes-Girlfriend and the Sometimes-Girlfriend's friend.  Both women were struck with rounds from the defendant's gun and sought treatment at a hospital in Pueblo.  The

gun used in this incident was never recovered, but shell casings matched the shell casings from the September 12, 2021, incident.

The defendant was arrested again following the September 17, 2021, shooting. He was interviewed and, at first, stated that he did not know anything about the above-described incident. He later stated that the Sometimes-Girlfriend's vehicle was ramming his vehicle so he fired two shots because he was afraid. The defendant was, again, charged and released.

The defendant is also a drug dealer. On October 19, 2020, the defendant sold 221.8 grams of methamphetamine (100% purity) to a confidential source (the "CS"). On February 19, 2021, the defendant sold 98.2 grams of heroin to the CS.

## Procedural History

The defendant was initially charged by complaint and then indicted in two counts of 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm on September 12 and September 17, 2021. ECF #1,13. He was arrested on the federal charges on April 15, 2022, and ordered detained. ECF #3, 11.

On March 7, 2023, the defendant consented to the filing of an information against him, charging two counts of 18 U.S.C. § 922(g)(1) and two counts of 21 U.S.C. 841(a)(1). That same day, the defendant pled guilty to the charges in the information pursuant to a plea agreement. Sentencing is scheduled for June 1, 2023, at 10:00 a.m.

The defendant has been in custody since his arrest.

## Guidelines Calculation

In the plea agreement, the parties calculated the defendant's total offense level as 30 and his criminal history category IV for a Guidelines range of 135-168 months'

3

imprisonment. The PSR, however, computed the defendant's criminal history category as V, for a Guidelines range of 151-188 months' imprisonment. The Government agrees with the Probation Office's computation of the defendant's criminal history and believes the correct Guidelines range is 151-188 months' imprisonment.

## Motion for Downward Variance

Regardless of whether the Court agrees with the defendant or the Probation Office as to the defendant's criminal history category, the Government respectfully requests that the Court sentence the defendant to 115 months' imprisonment as a downward variance.

After the Government charged the defendant with two counts of 18 U.S.C. § 922(g)(1), the Government began engaging in negotiations with the defendant to resolve his pending state drug cases as well. At the time of these negotiations, the Government did not have access to the lab reports detailing the methamphetamine purity, so the Government made a plea offer to the defendant based on the methamphetamine mixtures and substances Guidelines, which worked out to a Guidelines range of 92-115 months' imprisonment, as follows:

Counts One and Two (§ 922(g)):

- Pursuant to U.S.S.G. § 3D1.2(d), Counts One and Two group.
- Under U.S.S.G. § 2K2.1, the base offense level is determined pursuant to § 2K2.1(c)(1)(A), which references U.S.S.G. § 2X1.1(a). Pursuant to U.S.S.G. § 2X1.1(a), the base offense level is determined by the Guideline for the substantive offense, which the parties agree is § 2A2.1(a)(2), for the attempted murder of the Ex-Husband and the Sometimes-Girlfriend and her friend. Accordingly, the base offense level is 27.

Counts Three and Four (§ 841(a)(1)):

- Pursuant to U.S.S.G. § 3D1.2(d), Counts Three and Four group
- Under U.S.S.G. § 2D1.1, the converted drug weight is 612.9 kg, which

translates to base offense level 26.

Total Offense Level

- Pursuant to U.S.S.G. § 3D1.4, the group comprising Counts Three and Four are one Unit.  The group comprising Counts One and Two are a separate Unit.  Accordingly, two levels are added, for an adjusted offense level of 29.
- Pursuant to U.S.S.G. §§ 3E1.1(a) and (b), three levels are subtracted for acceptance of responsibility. The resulting total offense level is 26.

At CHC IV—which is what the parties calculated in the plea agreement—the defendant's Guidelines range would be 92-115 months.  At CHC V—which is the correct CHC, according to the Probation Office—the defendant's Guidelines range under this calculation would be 110-137 months.

The Government promised in the plea agreement to recommend a sentence within the Guidelines range of 92-115 months' imprisonment, and does so now.

## Application of the 18 U.S.C. § 3553(a) Factors

A. *Nature and Circumstances of the Offense*

There can be no question that the offenses here were extraordinarily serious.  In two separate incidents, one week apart, the defendant deliberately and specifically fired a gun at multiple people.  On September 12, 2021, he fired more than a half dozen shots at a moving vehicle in a residential neighborhood.  It is only sheer luck that he did not kill the Ex-Husband or an innocent person.

Then, after being bailed from custody in Pueblo, one week later, he fired a gun from his moving vehicle at the Sometimes-Girlfriend and her friend, in another moving vehicle. This time, he actually shot two women, requiring them to seek medical treatment.  Again, it was only sheer luck that he did not kill one or both of them—or someone else.

5

Although intentionally shooting at three people is the most serious of the offense conduct, the drug dealing is also serious. In addition to trying murder members of his community with a firearm, drug dealing is conduct that could have just as easily killed numerous people.

There can be no question that, given the nature and circumstance of the offenses here, a lengthy term of imprisonment is warranted.

### B. History and Characteristics of the Defendant

The defendant has an extremely lengthy criminal history spanning over two decades. Although many of the defendant's convictions are for serious, violent offenses, he has never spent more than barely over a year in jail, and most of his offenses resulted in much less time in custody than that. It is no exaggeration to say that the defendant has spent his entire adult life committing crime after crime with very little to redeem himself otherwise.

### C. The Need for the Sentence to Achieve the Aims of 18 U.S.C. § 3553(a)(2)

The requested sentence will also reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, provide deterrence to criminal conduct, and protect the public from further crimes of the defendant.

Perhaps most importantly, a long sentence of incarceration will incapacitate the defendant and protect the public from his crimes. He is clearly a man with an extreme propensity for violence and no regard for the lives of others. Pueblo, and the entire state of Colorado, will be safer with him in prison.

But a lengthy sentence of incarceration is also appropriate here to reflect the very serious nature of the offense, as describe above. In addition, given that the

defendant—despite his repeated contacts with the criminal justice system—has served only scant time in custody, a lengthy sentence in this matter will promote respect for the law.  Hopefully, such a sentence will also provide deterrence, and serve as a reminder to the defendant that serious crimes result in serious consequences in federal court.  Finally, this defendant simply deserves to be in prison for a long time, as punishment for his violent and callous offenses.  The requested sentence will, hopefully, serve all of these purposes of sentencing.

## Conclusion

The Government respectfully requests that the Court sentence the defendant to 115 months' imprisonment to be followed by five years of supervised release.

Respectfully submitted this 17th day of May, 2023.

        COLE FINEGAN
        United States Attorney

By: *s/ Andrea Surratt*
   Andrea Surratt
   Assistant United States Attorney
   U.S. Attorney's Office
   1801 California St., Suite 1600
   Denver, CO 80202
   Telephone: (303) 454-0100
   e-mail:  Andrea.Surratt@usdoj.gov
   Attorney for the Government