FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

October 31, 2023

Christopher M. Wolpert
Clerk of Court

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LEONARD CORDOVA,

    Defendant - Appellant.

No. 23-1241
(D.C. No. 1:22-CR-00132-RMR-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Leonard Cordova pleaded guilty to four crimes and now appeals. The government moves to enforce the appeal waiver in his plea agreement. We typically resolve such a motion through a familiar three-pronged analysis. *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam). Here, however, Mr. Cordova does not dispute that all three *Hahn* prongs support enforcing his waiver. He instead argues that his appeal waiver is unenforceable because the government breached its promise in the plea agreement to recommend a sentence between 92 and 115 months. Although the prosecutor technically fulfilled that

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

promise by recommending a 115-month sentence, Mr. Cordova says the prosecutor gave mere lip service to the recommendation while signaling through her arguments that the court should impose a longer sentence. We conclude that the government did not breach the agreement, so we grant the motion to enforce and dismiss this appeal.

## *Background*

Though they see things differently now, the parties appeared to be on the same page at the change-of-plea hearing. They presented an agreement calling for Mr. Cordova to plead guilty to four charges: two counts of possessing a firearm or ammunition after a felony conviction, and two counts of distributing a controlled substance. He also agreed to a broad appeal waiver. For its part, the government agreed to recommend a sentence between 92 and 115 months. Mr. Cordova entered his guilty pleas, and the court set a sentencing hearing.

Before sentencing, the probation office determined that the sentencing guidelines called for a range of 151–188 months, a higher range than the parties had predicted in the plea agreement. The prosecutor moved for a variance from the guidelines range, requesting a sentence of 115 months. And she submitted a video recording apparently depicting Mr. Cordova firing several shots at a vehicle in a residential neighborhood. Those events contributed to the factual basis for one of Mr. Cordova's felon-in-possession convictions.

The current dispute blossomed at the sentencing hearing. The government recommended a sentence of 115 months, noting that the lengthy plea negotiations in this case had "largely concluded before the Government had access to the drug purity

analysis," Mot. to Enforce, Attach. 3 at 18, an analysis showing that Mr. Cordova had distributed "methamphetamine of 100% purity," *id.*, Attach. 1 at 8.  The prosecutor explained that her estimate "of the guideline range was based on methamphetamine mixture and substance instead of actual methamphetamine." *Id.*, Attach. 3 at 18.  Her argument also highlighted the video of Mr. Cordova shooting at a vehicle, calling his behavior "simply inexcusable." *Id.*  Ultimately, she argued, Mr. Cordova deserved "every second" of the 115-month sentence she had recommended. *Id.*

Mr. Cordova's attorney labelled the prosecutor's statements disingenuous. He alleged that the prosecutor had merely paid "lip service" to a 115-month recommendation "with a wink and a nod." *Id.* at 23.  For example, defense counsel said, the prosecutor had implied that she would not have made the same plea offer if she had received the results of the purity analysis earlier.  In doing so, counsel concluded, the prosecutor failed "to support the plea agreement." *Id.* at 28.

The district court concluded that there was no evidence "of intentional bad faith" by the prosecutor and that the government appeared to stand by the plea agreement. *Id.*  In the end, the court sentenced Mr. Cordova to serve a total of 151 months in prison.

### *Discussion*

Because Mr. Cordova does not dispute that all three *Hahn* prongs support enforcing his appeal waiver, we need not address those prongs. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005).

3

And so we turn to the parties' dispute—whether the government breached the plea agreement during sentencing. If Mr. Cordova is correct that the government breached the agreement, then the appeal waiver in the agreement is unenforceable. *See United States v. Trujillo*, 537 F.3d 1195, 1200 (10th Cir. 2008). We review de novo whether the government breached the agreement. *See id.*

"The government owes the defendant a duty to pay more than lip service to a plea agreement." *United States v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007) (internal quotation marks omitted). "A plea agreement may be breached when the government's attorney is not only an unpersuasive advocate for the plea agreement, but, in effect, argues against it." *Id.* (brackets, ellipsis, and internal quotation marks omitted).

To support his claim, Mr. Cordova relies on two aspects of the prosecutor's sentencing argument—her highlighting the video showing Mr. Cordova shooting at a vehicle and her statements that plea negotiations had largely concluded before she received the drug-purity analysis. These actions, considered either separately or together, do not amount to a breach.

The prosecutor did not breach the plea agreement when she submitted the video and argued that the "violent behavior" it depicted was "simply inexcusable."[1] Mot. to Enforce, Attach. 3 at 18–19. Mr. Cordova suggests that the prosecutor

---

[1] The government argues that we should review Mr. Cordova's challenge to the prosecutor's conduct related to the video for plain error because he did not raise it in district court. We will assume that Mr. Cordova preserved the argument, and we apply de novo review.

should not have even submitted the video because it "had little relevance to the charges." Resp. at 5. We disagree because the video depicted conduct underlying count one. Indeed, Mr. Cordova himself stipulated in the plea agreement that he had used a "handgun to shoot at a moving vehicle." Mot. to Enforce, Attach. 1 at 7. Although we do not doubt that the video provided powerful evidence, the prosecutor had no obligation to "sugarcoat the facts." *United States v. Almonte-Nuñez*, 771 F.3d 84, 91 (1st Cir. 2014). And because Mr. Cordova sought a shorter sentence, the prosecutor had every right to underscore aggravating facts to support her request for a 115-month sentence. *See id.* (concluding that the prosecutor remained "within fair territory in emphasizing facts that made a sentence at the low end of the" guidelines range inappropriate, because the plea agreement allowed her to seek a sentence at the "upper end" of the range).

Nor did the prosecutor breach the agreement when she explained that plea negotiations had largely concluded by the time she received the drug-purity analysis. Mr. Cordova maintains that the prosecutor implied through this statement that she would not have made the same plea offer with full awareness of the methamphetamine's purity. But context makes clear that the point of the prosecutor's statement was to explain to the court why her earlier estimate of the guidelines range fell below the actual range, requiring her to recommend a downward variance at sentencing. *See* Mot. to Enforce, Attach. 3 at 18 (explaining "how we got to the agreed-upon guideline range, which results now in a recommendation for a downward variance"). And so the statement does not, in effect, argue against the

5

prosecutor's recommendation, especially when considered alongside her four statements during the same hearing indicating that she stood by the plea agreement.

## *Disposition*

We grant the government's motion to enforce Mr. Cordova's appeal waiver, and we dismiss this appeal.

> Entered for the Court
> Per Curiam

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

October 31, 2023

Mr. Jess D Mekeel
Office of the United States Attorney
District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202

Mr. Harvey Abe Steinberg
Springer and Steinberg
1400 South Colorado Boulevard, Suite 500
Denver, CO 80222

RE:     23-1241, United States v. Cordova
        Dist/Ag docket: 1:22-CR-00132-RMR-1

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

CMW/klp